# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## DOCKET NO. 1:19-CV-00159-MOC

| | |
|---|---|
| LEILA LOCKERBY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| ANDREW M. SAUL, ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on review of a final decision of the Commissioner of Social Security denying Plaintiff Leila Lockerby's application for disability insurance benefits and supplemental security income. Plaintiff filed a Motion for Summary Judgment, requesting an order of reversal and remand for rehearing. (Doc. No. 9). The Commissioner in turn filed a Motion for Summary Judgment, requesting affirmance. (Doc. No. 11). For reasons set forth below, Plaintiff's summary judgment motion is granted, the Commissioner's summary judgment motion is denied, and this matter is remanded for reconsideration consistent with this opinion.

## I. BACKGROUND

### A. Administrative Exhaustion

In January 2015, Plaintiff filed applications for a period of disability and disability insurance benefits under Title II, and supplemental security income under Title XVI, of the Social Security Act (the "Act"), alleging she had been disabled since February 27, 2014. (Tr. 11). Plaintiff's claims were denied initially and upon reconsideration, so she filed a written request for a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on October 30, 2017, for de novo consideration of Plaintiff's claims. (Id.). On June 1, 2018, the ALJ issued a

decision, concluding Plaintiff was not disabled within the meaning of the Act. (Tr. 22). The Appeals Council denied Plaintiff's request for review on March 28, 2019, rendering the ALJ's decision final and thus reviewable by this Court. (Tr. 1). Plaintiff has exhausted available administrative remedies, so this case is ripe for judicial review, pursuant to 42 U.S.C. § 405(g).

**B.     Sequential Evaluation Process**

The Act provides that "an individual shall be considered to be disabled . . . if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see id. § 423(d)(1)(A). The Commissioner uses a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

2. An individual who does not have a "severe impairment" will not be found to be disabled;

3. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

4. If, upon determining residual functional capacity ("RFC"), the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

5. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

See 20 C.F.R. §§ 404.1520, 416.920. The claimant "bears the burden of production and proof during the first four steps of the inquiry." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). If

2

the claimant carries its burden through the fourth step, the burden shifts to the Commissioner to show other work exists in the national economy that the claimant can perform. See id.

C.     **The Administrative Decision**

The issue before the ALJ was whether Plaintiff was disabled from February 27, 2014, the alleged disability onset date, to the date of the decision. Using the sequential evaluation process, the ALJ concluded at step five that Plaintiff was not disabled within the meaning of the Act.

To begin, at step one, the ALJ recognized that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 13). Next, at step two, the ALJ found that Plaintiff suffered from the following severe impairments: anxiety, depression, post-traumatic stress disorder, schizophrenia, and obesity. (Id.). At step three, the ALJ further recognized that Plaintiff suffered from: moderate limitations in interacting with others, concentrating, persisting, and maintaining pace; and mild limitations in understanding, remembering, and applying information. (Tr. 14). Even so, the ALJ decided this combination of impairments did not meet or equal the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (Id.).

Before turning to the next step, the ALJ found Plaintiff had the residual functional capacity to perform light work, as defined in 20 C.F.R. §§ 404.1567 and 416.967, except she was limited to: simple, routine, repetitive tasks; a "non-production pace"; a stable work setting; only occasional and superficial public contact; frequent interactions with supervisors and co-workers without teamwork; and jobs without conflict resolution. (Tr. 15–20). In so finding, the ALJ recognized that Plaintiff suffers from "anxiety, depression, schizophrenia, and PTSD" and that those disorders create "some mental health limitations." (Tr. 17, 19). Still, the ALJ reasoned that the "longitudinal evidence of record . . . clearly shows that once the claimant began receiving regular mental health

treatment and taking psychotropic medications on a regular basis, she had significant improvements of her mental health symptoms." (Tr. 20).

Based on these findings, the ALJ concluded at step four that Plaintiff was unable to perform past relevant work as a customer service representative, a nursing assistant, a counter attendant, or an appliance assembler. (Tr. 20). Still, at step five, the ALJ found that Plaintiff could perform various jobs that existed in significant numbers in the national economy, including: cleaning and housekeeping, officer helping, and marking. (Tr. 21). Because such jobs existed, the ALJ held that Plaintiff was not disabled within the meaning of the Act. (Id.).

## II. DISCUSSION

In considering cross-motions for summary judgment, this Court "examines each motion separately, employing the familiar standard" provided by Federal Rule of Civil Procedure 56. Desmond v. PNGI Charles Town Gaming, 630 F.3d 351, 354 (4th Cir. 2011). Thus, each motion is reviewed "on its own merits 'to determine whether either of the parties deserve judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted).

When reviewing a disability determination, the Court "is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). Courts do not conduct de novo review of the evidence. See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). Instead, our inquiry is limited to whether there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla evidence but may be less than a preponderance." Id. The Court will not "reweigh conflicting evidence, make credibility determinations, or

substitute [its] judgment for that of the ALJ." Id. (alterations omitted). Put simply, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Id. (alterations omitted).

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). Thus, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Id. If the Court has "no way of evaluating the basis for the ALJ's decision, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" Id. (quoting Florida Power & Light v. Lorion, 470 U.S. 729, 744 (1985)); see Brown v. Colvin, 639 F. App'x 921, 922 (4th Cir. 2016) (explaining courts do not "min[e] facts from the [administrative] record to support the ALJ's decisions"). This ensures the ALJ can "adequately explain his reasoning . . . in the first instance." Radford, 734 F.3d at 296.

On judicial review, Plaintiff contends the ALJ failed to adequately weigh and consider the medical opinion evidence of Plaintiff's treating mental health expert. As discussed below, the Court agrees with Plaintiff, and thus remands this case to the ALJ for reconsideration.[1]

When making a disability determination, the ALJ has an obligation to consider all relevant evidence. See Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017); 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3). To that end, the ALJ's final decision "must both identify evidence that supports his conclusion and build an accurate and logical bridge from that evidence to his conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (alterations omitted). An accurate and

---

[1] Plaintiff points to several additional errors that the ALJ purportedly made, but because the Court remands for reconsideration, the Courts declines to consider those alleged errors at this juncture.

5

logical bridge must consider both favorable and unfavorable evidence; in other words, the ALJ "cannot simply cherrypick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." Lewis, 858 F.3d at 869 (citation omitted).

In evaluating relevant evidence, the ALJ must "always consider the medical opinions in [a] case." 20 C.F.R. §§ 404.1527(b), 416.927(b).[2] And where the ALJ receives a medical opinion from a treating physician, the ALJ must give that opinion "controlling weight" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the claimant's case record." Lewis, 858 F.3d at 867 (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)). When the ALJ rejects a treating physician's opinion, they must provide more than a "perfunctory" explanation for doing so. Id.

From at least April 2017 to August 2017, Plaintiff was evaluated monthly by her treating mental health provider, Dr. Terrence Snyder, a psychiatrist at RHA Behavioral Health. Dr. Snyder created written summaries of each visit, and those summaries were before the ALJ when making his decision. In April, Plaintiff reported a host "depressive symptoms" and "PTSD symptoms" commensurate with prior diagnoses. (Tr. 780). After the visit, Dr. Snyder further diagnosed Plaintiff with schizophrenia and polysubstance use disorder and recognized that her insight and judgment were impaired. (Tr. 786–88). In May and June, Plaintiff reported improvements in her condition, (Tr. 795, 803), and in June, Dr. Snyder himself opined that Plaintiff's "insight and judgment improved," (Tr. 806). But by July, Plaintiff's condition worsened, as she was "possibly taking too much ibuprofen" and engaging in "risky behaviors," including "walking in the middle of the road, . . . lying in the road[,] . . . and sleeping too much during the day." (Tr. 812). Based

---

[2] Plaintiff's claims were filed before March 27, 2017, so relevant opinion evidence is evaluated according to the procedures provided by 20 C.F.R. §§ 404.1572 and 416.927.

6

on these "recent poor choices," Dr. Snyder opined that Plaintiff again exhibited "impaired insight and poor judgment." (Tr. 815). In August, Dr. Snyder again thought that Plaintiff's "insight and judgment [were] improving." (Tr. 824). He specifically noted that Plaintiff reported "she has not had hallucinations in about 4 months." (Tr. 821). Still, Plaintiff continued to report "depressive symptoms," including "oversleeping," feeling "sometimes grumpy," "more down than up," "occasional feelings of worthlessness," and "a lot of negative self thoughts." (Tr. 821). With knowledge of this treatment history, Dr. Snyder opined in August that Plaintiff "could work a few hours a week in the right kind of job, but [was] not ready for full-time work." (Tr. 821).

In determining that Plaintiff was not disabled, the ALJ acknowledged that Dr. Snyder believed she was not ready for full-time work, but determined that opinion was worthy of "[l]ittle weight." (Tr. 20). According to the ALJ, this opinion was "[in]consistent with the mental health treatment notes, which clearly show an excellent response to treatment and medications with resolution of her anxiety and hallucinations and improvement of her mood." (Id.).[3] Several problems arise from the ALJ's brief rejection of Dr. Snyder's treating medical opinion.

First, even assuming Plaintiff's mood had "improved," such improvements are hardly dispositive on the issue of disability. As several courts have recognized, "improvement is a relative concept and, by itself, does not convey whether a patient has recovered sufficiently to no longer be deemed unable to perform work on a sustained basis." Martz v. Comm'r, Soc. Sec. Admin., 649 F. App'x 948, 960 (11th Cir. 2016); see Boulis-Gasche v. Comm'r of Soc. Sec., 451 F. App'x 488, 494 (6th Cir. 2011) ("By concluding that some unspecified improvement in Plaintiff's mood

---

[3] On judicial review, the Government now asserts Dr. Snyder's opinion reached an issue that was "reserved to the Commissioner." (Doc. No. 12 at 7). But it is well-established that courts will "not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005) (citing SEC v. Chenery Corp., 318 U.S. 80, 87 (1943)).

7

cured any anxiety or depression that Plaintiff was experience, 'the ALJ impermissibly substituted his own judgment for that of a physician.'" (citation and alterations omitted)); see also Tanner v. Comm'r of Soc. Sec., 602 F. App'x 95, 100 (4th Cir. 2015) (explaining "medical records often span [long time periods, so] it is inevitable that some evidence will show signs of a claimant's improvement and other evidence will show signs of a claimant's regression").

Second, in summarily finding that Plaintiff's mood had improved, the ALJ failed to grapple with contrary evidence indicating that Plaintiff continued to suffer from ongoing mental limitations. As noted above, in July 2017—just one month before issuing his medical opinion—Dr. Snyder determined that Plaintiff suffered from "impaired insight and poor judgment" in light of her "recent poor choices." (Tr. 815). Rather than address this finding, the ALJ simply noted that Plaintiff reported being in "descent" condition during her July evaluation. (Tr. 19).

Finally, the record contains several additional unaddressed medical opinions which bolster Dr. Snyder's continued concerns. See Lewis, 858 F.3d at 866. For example, in August 2017, Plaintiff was evaluated by a Licensed Professional Counselor for the Family Preservation Services of North Carolina. Like Dr. Snyder, the LPC opined that Plaintiff's "psychotic symptoms are well controlled," but she "continues to have significant symptoms of Bipolar Disorder, mostly hypomanic at this time, . . . and has significant anxiety." (Tr. 561).[4] Likewise, in January 2018,

---

[4] Notably, the ALJ failed to acknowledge the LPC's concurring opinion. LPCs are not "acceptable medical sources," but their opinions "may provide insight into the severity of the claimant's impairment(s) and how it affects the individual's ability to function," so their "opinions are entitled to consideration." Whitfield v. Saul, No. 1:19-CV-31, 2019 WL 4635652, at *3 (W.D.N.C. Sept. 23, 2019) (collecting cases). The ALJ's complete failure to grapple with this contrary opinion provides an additional basis to reverse and remand for reconsideration. See id.

8

Laura Brooks, PA, evaluated Plaintiff and found that she continued to struggle with Bipolar Disorder and anxiety. (Tr. 714, 716, 730).[5]

In sum, by failing to address evidence that was inconsistent with his finding of "improvement," the ALJ failed to consider all relevant evidence. See Lewis, 858 F.3d at 869. Therefore, the decision of the ALJ is reversed and remanded for fuller consideration.

---

[5] Additionally, in assessing Plaintiff's residual functional capacity, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments." SSR 96-8p, 1996 WL 374184, at *5. Here, the ALJ mentioned Plaintiff's diagnoses of Bipolar Disorder and Borderline Personality Disorder, but entirely failed to explain what limitations followed from those diagnoses. (Tr. 14–15). As discussed, the record suggests Plaintiff continued to struggle with limitations from her Bipolar Disorder in August 2017—even while symptoms from other disorders improved. The failure to address these limitations likewise warrants remand for reconsideration. See, e.g., Crystal Louise H. v. Comm'r, Soc. Sec. Admin., No. 18-CV-3922, 2019 WL 5309997, at *6 (D. Md. Oct. 21, 2019); McGinnis v. Saul, No. 3:18-CV-797, 2019 WL 5275536, at *8 (E.D. Va. Sept. 23, 2019), report and recommendation adopted, 2019 WL 5269098 (E.D. Va. Oct. 17, 2019).

**ORDER**

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. No. 9) is **GRANTED** and the Commissioner's Motion for Summary Judgment (Doc. No. 11) is **DENIED**. Pursuant to the power of this Court to enter a judgment affirming, modifying, or reversing the decision of the Commissioner under 42 U.S.C. § 405(g), the ALJ's final decision is **REVERSED**, and this case is hereby **REMANDED** for a decision consistent with this Order.

Signed: January 30, 2020

Max O. Cogburn Jr.
United States District Judge